Ryan Q. Keech (SBN 280306)
ryan.keech@klgates.com
Rebecca Makitalo (SBN 330258)
rebecca.makitalo@klgates.com
Johnathan A. Coleman (SBN 352670)
chief.coleman@klgates.com
**K&L GATES LLP**
10100 Santa Monica Blvd, 8th Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant Robert Halmi*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZYLAR PICTURES, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>ROBERT HALMI, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:25-cv-02503<br><br>[Assigned to the Hon. Cynthia Valenzuela]<br><br>**DEFENDANT ROBERT HALMI NOTICE OF MOTION AND MOTION TO DISMISS ZYLAR PICTURES, LLC'S COMPLAINT**<br><br>*[Filed concurrently herewith Declaration of Rebecca I. Makitalo; [Proposed] Order]*<br><br>Date: June 13, 2025<br>Time: 1:30pm<br>Courtroom: 5D<br><br>Trial Date:        None Set. |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on June 13, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5D of the above-captioned Court, located at 350 W. 1st Steet, Los Angeles, CA, 90012, Defendant Robert Halmi ("Halmi") will, and hereby does, move the Court to compel arbitration and thus dismiss Zylar Pictures, LLC ("Zylar")'s Complaint on the basis that the Court lacks subject matter jurisdiction under Rule 12(b)(1) in light of a valid and enforceable agreement to arbitrate covering this dispute. In the alternative, Halmi also will, and hereby does, move the Court to transfer the above-captioned case to the District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because there is a valid and enforceable forum-selection clause governing the dispute and as a matter of public interest favoring transfer. Lastly, in the alternative, Halmi will, and hereby does, move the Court to dismiss pursuant to Rule 12(b)(6) for failure to plead his fraud claims with the requisite particularity required by Rule (9)(b).

This Motion is made following the conference of counsel for Halmi and Zylar pursuant to Local Rule 7-3. Counsel for the parties conferred on April 8, 2025 but were unable to resolve their dispute.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, and the Declaration of Rebecca I. Makitalo filed concurrently herewith, complete files and records in this action, and such other and further matters as the Court may deem just and proper to consider in connection with this Motion.

DEFENDANT ROBERT HALMI'S MOTION TO DISMISS PLAINTIFF ZYLAR PICTURES, LLC'S COMPLAINT

1

2

3

4    Dated:  April 13, 2025

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K&L GATES LLP


By:

Ryan Q. Keech
Rebecca I. Makitalo
Chief Coleman

*Attorneys for Defendant Robert Halmi*

DEFENDANT ROBERT HALMI'S MOTION TO DISMISS PLAINTIFF ZYLAR PICTURES, LLC'S COMPLAINT

# TABLE OF CONTENTS

**I.    INTRODUCTION** ....................................................................................... 1

**II.   FACTUAL ALLEGATIONS** ....................................................................... 2

**III.  LEGAL ARGUMENT** ................................................................................ 4

    **A.    This Action Should Be Compelled To Arbitration.** ....................... 4

        **1.    The FAA Governs the Arbitration Clause.** ........................... 4

        **2.    The Arbitration Clause is Valid and Enforceable.** ............... 5

        **3.    Plaintiff's Claim Arises Under the Agreement and is Subject to the Arbitration Clause.** .......................................... 6

        **4.    Plaintiff is Equitably Estopped from Denying the Enforceability of the Arbitration Clause with Halmi.** ......... 7

    **B.    If Not Dismissed in its Entirety, the Action Should be Transferred to the Southern District of New York.** ..................... 9

        **1.    The Forum-Selection Clause is Presumptively Valid and Enforceable.** ................................................................... 9

        **2.    The Forum-Selection Clause is Binding.** ............................ 10

        **3.    Public Interest Factors Weigh in Favor of Transferring the Action to the Southern District of New York.** ................................................................................ 12

    **C.    Plaintiff Fails to Plead Its Fraud-Based Allegations with Particularity as Required by Federal Rule of Civil Procedure 9(b).** ................................................................................. 13

**CERTIFICATE OF WORD COUNT** ................................................................ 17

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) ............................................................................................ 4

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ......................................................................................... 4, 5

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013) ..................................... 9

*Carnival Cruise Lines v. Shute*,
    499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ............................... 9, 10

*Denney v. Jenkens & Gilchrist*,
    412 F. Supp. 2d 293 (S.D.N.Y. 2005) ............................................................. 7

*Fantastic Films Int., LLC v. Screen Media Ventures, LLC*,
    2022 WL 3012170 (C.D. Cal. Jul. 12, 2022) .................................................... 9

*Ferguson v. Countrywide Credit Indus., Inc.*,
    298 F.3d 778 (9th Cir. 2002) ............................................................................ 5

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...................................................................................... 5, 13

*Geier v. m-Qube Inc.*,
    824 F.3d 797 (9th Cir. 2016) ............................................................................ 4

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,
    599 F.3d 1102 (9th Cir. 2010) .......................................................................... 4

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
    2016 WL 4259126 (N.D. Cal. Aug. 12, 2016) ................................................ 12

*Goldman v. KPMG, LLP*
    (2009) 173 Cal.App.4th 209, 92 Cal.Rptr.3d 534 ............................................ 8

*JSM Tuscany, LLC v. Superior Ct.*,
    193 Cal. App. 4th 1222, 123 Cal. Rptr. 3d 429 (2011) ................................... 8

*Kruse v. Bank of Am.*,
    202 Cal. App. 3d 38 (1988) ............................................................................ 15

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ..................................... 9, 10

ii

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988)............................................................................... 11, 12

*Manila Industries, Inc. v. Ondova Ltd. Co.*,
   334 Fed. Appx. 821 (9th Cir. 2009)........................................................................ 12

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
   186 Cal. App. 4th 696, 111 Cal. Rptr. 3d 876 (2010)............................................. 8

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993)...................................................................................... 14

*Pirozzi v. Fiserv Corp.*,
   668 F. Supp. 3d 968 (C.D. Cal. 2022)................................................................... 11

*Reid v. Tandym Grp., LLC*,
   697 F. Supp. 3d 62 (S.D.N.Y. 2023)........................................................................ 7

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991).............................................................................. 6, 12

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir.1985)................................................................................... 14

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999).................................................................................... 6

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir.1996).................................................................................... 14

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
   660 F. Supp. 2d 1163 (C.D. Cal. 2009).................................................................. 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)................................................................................. 14

*Victrola 89, LLC v. Jaman Props. 8 LLC*,
   46 Cal. App. 5th 337, 260 Cal. Rptr. 3d 1 (2020)................................................... 7

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)................................................................................................. 4

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
   407 F. Supp. 3d 931 (S.D. Cal. 2019).................................................................... 11

*Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*,
   2020 WL 2730926 (C.D. Cal. Mar. 13, 2020)......................................................... 8

iii

**Statutes**

9 U.S.C. § 1, *et seq.* ........................................................................................... 4

9 U.S.C. § 2 ....................................................................................................... 4

28 U.S.C. §1404(a) ................................................................................. 1, 10, 11, 12

Federal Arbitration Act ...................................................................................... 4, 5

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ............................................... 1, 4, 9

Rule 9(b) ............................................................................................. 1, 13, 14, 15

Rule 12(b)(6) ............................................................................................... 1

DEFENDANT ROBERT HALMI'S MOTION TO DISMISS PLAINTIFF ZYLAR PICTURES, LLC'S COMPLAINT

## I.   **INTRODUCTION**

Plaintiff Zylar Pictures, LLC's ("Plaintiff" or "Zylar") strategic lawsuit against Defendant Robert Halmi ("Defendant" or "Halmi") should not be pending in this or any Court: it presents a clear case of sour grapes.  Zylar's Complaint both attempts to obtain from Halmi benefits Zylar claims are owed to it, pursuant to an agreement it signed, while simultaneously seeking to bypass the valid and enforceable arbitration and forum-selection clauses contained in that very agreement.  Plaintiff may not have it both ways: so long as it attempts to claim from Halmi **contractual** benefits that it claims were owed to it by Halcyon Holdings Limited ("HHL"), its Complaint should be compelled to arbitration where it belongs and dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Even were it not the case that Plaintiff's Complaint was subject to dismissal in favor of arbitration – and it is – the Complaint should still be transferred to the Southern District of New York based on the operative agreements, which reflect considered judgments regarding the convenience of parties and witnesses and the interest of justice.  Having chosen to do business pursuant to an agreement with New York parties, governed by New York laws and a New York forum-selection clause, Plaintiff may not now shift gears and rely on nothing more than its own residence in this district to hale the Parties into the Central District of California.  Venue should be transferred to the Southern District of New York pursuant to 28 U.S.C. §1404(a) and as a matter of public interest favoring transfer.

Finally, dismissal is equally proper pursuant to Rule 12(b)(6) because Plaintiff, who purports to weave a tale of fraud, fails to meet its burden under Rule 9(b) to plead fraud with the requisite particularity – that is, provide the *who*, *what*, and *how* supporting its claims.  For all of these reasons, Halmi respectfully requests that the Court grant his Motion.

## II.    FACTUAL ALLEGATIONS

Plaintiff claims that it is a Los Angeles based production business with over a hundred (100) television and film projects. (Dkt. 1-01, "Compl." ¶ 10).  In or about August 2022, Plaintiff alleges that through its founding partner, Stan Spry, engaged in conversations with Halmi regarding thirty (30) of its projects that were in need of distribution. (*Id.* ¶ 11).

On October 15, 2022, Plaintiff entered into an International Multiple Rights Distribution Agreement ("Agreement") with HHL, which provided HHL with distribution rights for the thirty (30) film projects produced by Plaintiff for a license fee of $6.5 million.  (Declaration of Rebecca I. Makitalo ("Makitalo Decl."), ¶ 3, Ex. A; Compl. ¶¶ 1, 14, 15). The Agreement provided that it will be governed by and interpreted under the laws of the State of New York. ("Choice of Law") (Makitalo Decl., ¶ 3, Ex. A at 6, § V. A). The Agreement also contained a valid arbitration clause which reads, in relevant part:

> "**Arbitration:**
> Any dispute arising under this Agreement, including with respect to any right or obligation that survives termination of this Agreement will be administered and resolved by final and binding arbitration under the IFTA® Rules for International Arbitration in effect as of the Effective Date of this Agreement ("IFTA® Rules"). Each Party waives any right to adjudicate any dispute in any other court or forum, *except* that a Party may seek interim relief before the start of arbitration as allowed by the IFTA® Rules. The arbitration will be held in the Forum and under the Governing Law designated in the Deal Terms or, if none, as determined by the IFTA® Rules. The arbitration will be decided in accordance with the Governing Law. The Parties will abide by any decision in the arbitration and any court having jurisdiction may enforce it. The Parties submit to the jurisdiction of the courts in the Forum for interim relief, to compel arbitration, and to confirm or challenge an arbitration award."

(Makitalo Decl., ¶ 3, Ex. A, § 16.7) (the "Arbitration Clause").

The Agreement further contained a forum-selection clause that reads:

> "**Forum**: New York, New York.

> The exclusive location for resolving disputes under this Agreement is the Forum set forth above. To the extent allowed by the Governing Law, venue will be proper in any court in the Forum."

(Makitalo Decl., ¶ 3, Ex. A at 6, § V. C) (the "Forum-Selection Clause").

Thereafter, on November 2, 2022, Plaintiff alleges that HHL entered into a licensing agreement to distribute the media rights to Screen Media Ventures, LLC ("Screen Media"), for a license fee of $21.1 million. (Compl. at ¶ 18). Under the Zylar License Agreement, Plaintiff alleges the license fee had an initial installment of $500,000, payable by no later than December 8, 2022, followed by eight $750,000 installments payable every three months until November 22, 2024 (adding up to the total $6.5 million license fee). (*Id.*  ¶ 19). Plaintiff further alleges that, to date, Plaintiff has only received payment of $1 million (comprised of the first installment and partial payment of the second installment). (*Id.* ¶ 21). On November 27, 2023, Plaintiff terminated the agreement with HHL, citing alleged material breaches of contract. (*Id.*  ¶ 30).  The result of the termination was the return of many of the distribution rights.  (*Id*).

Thereafter, Plaintiff filed suit against Halmi (who is not a party to the Agreement), alleging that beginning in February 2023, Zylar did not receive the installment payments due under the Agreement and that Halmi was responsible.  (*Id.* at ¶ 22).  However, the truth is different: Screen Media, the party HHL ultimately licensed Zylar's media rights to, became insolvent and having no solvent company to assert claims against, Plaintiff instead choose to file suit against Halmi, seeking benefits under ***that very same*** Agreement containing an Arbitration Clause and Forum-Selection Clause.  In fact, Defendant even admits to doing so.  (*Id.* at ¶¶ 27, 31 ("Hence, having been left holding the proverbial bag, Zylar has now been forced to seek recourse against Halmi…")).

**III.    LEGAL ARGUMENT**

    **A.    This Action Should Be Compelled To Arbitration.**

The Court must enforce an arbitration agreement if "(1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement." *Geier v. m-Qube Inc*., 824 F.3d 797, 799 (9th Cir. 2016); *Chiron Corp. v. Ortho Diognostic Sys*., Inc., 207 F.3d 1126, 1130 (9th Cir.2000). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is a procedurally proper mechanism to enforce an arbitration provision under the FAA. 9 U.S.C. § 1, *et seq*.; *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1104 (9th Cir. 2010).   "[C]ourts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision.'" *Daisley v. Blizzard Music* Ltd. (US), No. 217CV01500CASAS, 2017 WL 1628399, at *3 (C.D. Cal. May 1, 2017) *(*quoting *Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Philadelphia Ins. Companies*, No. 1:15-cv-00084-LJO, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015)).

    **1.  The FAA Governs the Arbitration Clause.**

The Federal Arbitration Act ("FAA") "makes arbitration agreements 'valid, irrevocable, and enforceable'" and reflects Congress' "principal purpose [of] ensur[ing] that arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), (quoting 9 U.S.C. § 2; *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468, 478 (1989). The FAA applies to all agreements involving or "evidencing a transaction involving commerce." 9 U.S.C. § 2. The U.S. Supreme Court has long maintained that "involving commerce" must be interpreted broadly in favor of enforcing agreements under the FAA. *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995).

On October 15, 2022, Plaintiff voluntarily entered into the Agreement, containing the Arbitration Clause. (Makitalo Decl., ¶ 3, Ex. A, § 16.7). Although the

FAA is not referenced explicitly in the Agreement, it governs the Arbitration Clause. The Agreement at issue involves parties who engaged in a business transaction involving interstate commerce for the distribution and exploitation of certain intellectual property rights for thirty (30) film projects produced by Plaintiff for exhibition throughout the United States and Internationally. There is no question here that the Agreement at issue here involves "interstate commerce" within the meaning of the FAA. Accordingly, the Arbitration Clause in the Agreement is governed by the FAA.

### 2.  The Arbitration Clause is Valid and Enforceable.

"When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *Daisley*, 2017 WL 1628399, at *5 (citations omitted); *Ferguson v. Countrywide Credit Indus., Inc*., 298 F.3d 778, 782 (9th Cir. 2002) ("[courts] apply ordinary state law principles that govern contract formation."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995). Agreements to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011).

On October 15, 2022, Plaintiff voluntarily entered into the Agreement, containing the Arbitration Clause and affixed its signature. (Makitalo Decl., ¶ 3, Ex. A, § 16.7). Plaintiff's Complaint alleges no facts that would support avoidance of the Arbitration Clause under generally applicable contract defenses.  Plaintiff does not allege that the Arbitration Clause itself was induced by fraud, duress, or any such other contract defense. Accordingly, there is no factual or legal basis to invalidate or refuse to enforce the Arbitration Clause.

### 3. Plaintiff's Claim Arises Under the Agreement and is Subject to the Arbitration Clause.

In light of the strong policy favoring enforcement of agreements to arbitrate, arbitration clauses are read broadly and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999), (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The Ninth Circuit has held that the phrase "any and all disputes ***arising under*** the arrangements contemplated hereunder…must be interpreted liberally." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1991) (emphasis added); *see also Simula*, 175 F.3d at 721 ("[T]he language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").

Dismissal in favor of arbitration is particularly appropriate where, similarly to the very broad language of the agreement to arbitrate in *Republic of Nicaragua*, the Arbitration Clause governs "Any dispute ***arising under*** this Agreement." (Makitalo Decl., ¶ 3, Ex. A, § 16.7) (emphasis added). This broad-scope language contained in the Arbitration Clause plainly encompasses Plaintiff's fraud claim in the above-titled action ("Action"). Plaintiff's claim for fraud is not only factually and legally connected to the Agreement – it is entirely based on it. Specifically, Plaintiff's fraud claim is rooted in the theory that "Plaintiff relied on Halmi's materially false and misleading representations to its detriment by entering into the Zylar License Agreement and then continuing to allow its rights to be exploited thereunder even after HHL failed to timely make its payments" under the Agreement. (Compl. ¶ 37). Further, Plaintiff makes reference to the Agreement ***at least 17 times*** throughout the Complaint, though notably does not attach the Agreement itself plainly containing the Arbitration Clause. (Compl. ¶¶ 15, 16, 18, 19, 20, 21, 22, 29, 30, 33, 34, 36, 37). Plaintiff cannot selectively invoke the benefits under the Agreement while

6

simultaneously denying the applicability of the Arbitration Clause within the same Agreement. Plaintiff's own pleading confirms that this Action arises directly under and relates to the Agreement, thus falling squarely within the broad scope of the Arbitration Clause.

### 4. Plaintiff is Equitably Estopped from Denying the Enforceability of the Arbitration Clause with Halmi.

To the extent Plaintiff contends that the Arbitration Clause is unenforceable as Halmi was a non-signatory to the Agreement, both federal and relevant state law disagree. Courts in New York are clear that, under the doctrine of equitable estoppel, nonsignatories can enforce an arbitration clause of an agreement where "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 76 (S.D.N.Y. 2023) (citation omitted). "Claims are intertwined 'where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause.'" *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 n.7 (2d Cir. 2004). "Courts have found claims to be intertwined where the nonsignatory had no obligations under the agreement containing the arbitration clause, where the intertwined claims did not require interpretation of the agreement, where the signatory's claims did not exclusively rely on the agreement, and where the intertwined claims may not have been meritorious." *Id.*

To the extent Plaintiff contends that California law should apply, it is squarely in accord. California courts, like New York, also permit nonsignatories to enforce arbitration clauses under principles of equitable estoppel. *See Victrola 89, LLC v. Jaman Props. 8 LLC*, 46 Cal. App. 5th 337, 353, 260 Cal. Rptr. 3d 1, 13 (2020) ("Under the doctrine of equitable estoppel, as applied in both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against

the nonsignatory are intimately founded in and intertwined with the underlying contract obligations."); *JSM Tuscany, LLC v. Superior Ct.*, 193 Cal. App. 4th 1222, 1237, 123 Cal. Rptr. 3d 429, 441 (2011) ("[A] nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations."). "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 221, 92 Cal.Rptr.3d 534; *see also Molecular Analytical Sys. v. Ciphergen Biosystems, Inc*., 186 Cal. App. 4th 696, 706, 111 Cal. Rptr. 3d 876, 887 (2010) ("The rule applies to prevent parties from trifling with their contractual obligations.").

Applying these principles, Halmi is entitled to enforce the Arbitration Clause of the Agreement against Plaintiff who is a signatory to the Agreement, which is the foundation of Plaintiff's claim and therefore, must be determined in accordance with the Arbitration Clause contained therein.  *See Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, 2020 WL 2730926, at *3 (C.D. Cal. Mar. 13, 2020) (granting motion to compel arbitration filed by nonparty and holding arbitrability must be determined by arbitrator under JAMS rules).  To the extent Plaintiff argues that claims framed in tort are not subject to contractual arbitration provisions, this argument is easily defeated as "[a] long line of California and federal cases holds that claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship between the parties." *Molecular Analytical Sys.*, 186 Cal. App. 4th at 712, 111 Cal. Rptr. 3d at 892. "The same principle applies in cases involving nonsignatories: 'That the claims are cast in tort rather than contract does not avoid the arbitration clause.'" *Id*. (quoting *Boucher v. Alliance Title*

*Company, Inc.* (2005) 127 Cal.App.4th 262, 268, 25 Cal.Rptr.3d 440); *see also Fantastic Films Int., LLC v. Screen Media Ventures, LLC*, 2022 WL 3012170, at *6 (C.D. Cal. Jul. 12, 2022) (finding that IFTA agreement to arbitrate in film licensing agreement covers copyright infringement claims).

As detailed above, Plaintiff's fraud claim against Halmi arises directly under and relates to the Agreement. Plaintiff's claim is deeply "founded in" and "intertwined" with the Agreement as Plaintiff references the Agreement at least 17 times in the Complaint when describing allegations of Halmi's alleged fraud. (Compl.  ¶¶ 15, 16, 18, 19, 20, 21, 22, 29, 30, 33, 34, 36, 37). Plaintiff's claim is directly related to the Agreement between Plaintiff and HHL and not only arises out of that contractual relationship but seeks to require Halmi to make good on benefits promised as part of that contractual relationship. (Compl.  ¶¶ 22, 25, 28, 29, 34). Plaintiff cannot simultaneously allege the substantive terms of the Agreement as the foundation of its claim against Halmi while disavowing the Agreement's Arbitration Clause. Therefore, the Court should dismiss the Complaint pursuant to FRCP 12(b)(1) given the existence of the valid and enforceable Arbitration Clause and compel Zylar to comply with its agreement to arbitrate.

## B. **If Not Dismissed in its Entirety, the Action Should be Transferred to the Southern District of New York.**

### 1. The Forum-Selection Clause is Presumptively Valid and Enforceable.

If the Court finds there is any doubt as to whether Plaintiff's claim is subject to the Arbitration Clause, it should nonetheless transfer the Action to the Southern District of New York. Forum selection clauses are considered prima facie valid. *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("Forum selection clauses are valid except in the rarest cases."); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60, 134 S. Ct.

9

568, 579, 187 L. Ed. 2d 487 (2013) (Forum-selection clause should be "given controlling weight in all but the most exceptional cases" in applications of § 1404(a)). A party claiming the clause is invalid or unenforceable due to unfairness bears a heavy burden of proof. *Carnival Cruise Lines*, 499 U.S. at 592, 111 S.Ct. 1522; *M/S Bremen,* 407 U.S. at 12, 92 S.Ct. 1907) ("The party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'")

When Plaintiff entered into the agreement that is at the foundation of this action, it recognized that New York – and not California – was the proper location for resolving its claims:

> "**Forum**: New York, New York.
> The exclusive location for resolving disputes under this Agreement is the Forum set forth above. To the extent allowed by the Governing Law, venue will be proper in any court in the Forum."

(Makitalo Decl., ¶ 3, Ex. A at 6, § V. C).

The contractual analysis here is the same: Plaintiff voluntarily entered into the Agreement containing the Forum-Selection Clause and has alleged no facts in the Complaint that would support denying enforcement of it. Plaintiff does not allege that the Forum-Selection Clause itself was induced by fraud or that it would be over-reaching in application. In short, the Forum-Selection Clause in the Agreement identifying New York as the proper forum is valid and should be enforced.

## 2.  The Forum-Selection Clause is Binding.

Ordinarily, for motions made pursuant to 28 U.S.C. section 1404(a), the "[C]ourt would weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atlantic Marine*, 134 S. Ct. at 63. However, "when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum" the analysis changes because "a valid forum-

selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. (citations omitted). Because the Agreement contains a valid and enforceable Forum Selection Clause, "the plaintiff's choice of forum merits no weight," and instead, the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Further, the Court should not consider arguments about the parties' private interests and "may consider arguments about public-interest factors only." *Id*. at 64. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id*.

Courts are also clear that a non-signatory defendant may enforce a forum selection clause when the alleged conduct of the non-signatory defendant is "closely related to the contractual relationship established by the [a]greement." *Pirozzi v. Fiserv Corp.*, 668 F. Supp. 3d 968, 974 (C.D. Cal. 2022); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514, n. 5 (9th Cir. 1988); *see also White Knight Yacht LLC v. Certain Lloyds at Lloyd's London,* 407 F. Supp. 3d 931 (S.D. Cal. 2019).

As discussed above, Plaintiff's fraud claim is closely related to and arises under the contractual relationship between Plaintiff and HHL, as established by the Agreement, and is equally enforceable by Halmi. (Compl.  ¶¶ 22, 25, 28, 29, 34). Plaintiff alleges its fraud claim is based upon the very relationship established and governed by the Agreement and specifically references the Agreement at least 17 times throughout its Complaint as forming the basis for its claim. (Compl.  ¶¶ 15, 16, 18, 19, 20, 21, 22, 29, 30, 33, 34, 36, 37). Thus, Plaintiff's fraud claim plainly arises under and relates to the Agreement.

Further, to the extent Plaintiff attempts to also contend that the Forum-Selection Clause cannot be applied to the tort claim, the Ninth Circuit has held that "forum selection clauses can be equally applicable to contractual and tort causes of

action." *Manetti-Farrow*, *supra*, 858 F.2d at 514. The Ninth Circuit found that the plaintiff's tort claims were subject to the forum selection clause at issue in that case because the "claims relate[d] in some way to the rights and duties enumerated in the [contract]." *Id.*; *see also Manila Industries, Inc. v. Ondova Ltd. Co.*, 334 Fed. Appx. 821, 823 (9th Cir. 2009) (finding plaintiff's tort claims subject to forum selection clause because the claims "relate[d] in some way to the rights and duties enumerated in the [contract]"). Moreover, the language of the forum selection clause at issue in this case is broad, covering "[a]ny dispute arising under this Agreement." (Makitalo Decl., ¶ 3, Ex. A at 6, § V. C). Courts have held that similar phrases including "any and all disputes arising under the arrangements contemplated hereunder…must be interpreted liberally." *Republic of Nicaragua*, 937 F.2d at 474.

Because Plaintiff's fraud claim is closely related to and arises under the Agreement, the Court should enforce the Forum-Selection Clause in the Agreement as to this Action.

### 3. Public Interest Factors Weigh in Favor of Transferring the Action to the Southern District of New York.

The Court need only consider the public interest factors when analyzing a valid forum selection clause. *Atlantic Marine*, 134 S. Ct. at 64. "The party acting in violation of the forum-selection clause, [] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. The public-interest factors of the 28 U.S.C. section 1404(a) analysis include "(1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum." *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, 2016 WL 4259126, at *3 (N.D. Cal. Aug. 12, 2016) (citing *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009)). Nonetheless, "those factors will rarely defeat a transfer motion." *Atlantic Marine*, 134 S. Ct. at 65.

DEFENDANT ROBERT HALMI'S MOTION TO DISMISS PLAINTIFF ZYLAR PICTURES, LLC'S COMPLAINT

Plaintiff cannot meet its heavy burden to show that the public interest factors overwhelmingly disfavor a transfer. *First*, it is clear that New York has a local interest in the lawsuit. Halmi is a New York resident, and New York has an interest in handling disputes involving its citizens in their home forum. (Dkt. 1, Ex. 2 at ¶ 2). New York courts also have an interest in enforcing Agreements in accordance with the parties' expectations. *Second*, the Agreement provides that New York law governs disputes arising under the Agreement. (Makitalo Decl., ¶ 3, Ex. A at 6, § V. A). New York courts have a clear interest in adjudicating disputes governed by New York law. This not only establishes the localized interest in New York but also establishes the "familiarity with the law" public interest factor, which certainly weighs more heavily in favor of transferring the Action to New York than it does to litigate the case in California. Further, it would be unfair to burden this Court with applying the Choice of Law Clause and transferring the case would avoid unnecessary conflict of law issues and ensures the forum most familiar with New York law will interpret and apply it.  Transferring the Action to the Southern District of New York would also not cause any administrative difficulties and is instead likely to relieve court congestion. Because of New York's local interest in the dispute, there is no administrative burden imposed on New York courts or juries because of an unrelated forum. Therefore, because the public interest factors weigh in favor of enforcing the Forum-Selection Clause, the Action should be transferred to the Southern District of New York.

### C. **Plaintiff Fails to Plead Its Fraud-Based Allegations with Particularity as Required by Federal Rule of Civil Procedure 9(b).**

In the event the Court does not compel arbitration and does not transfer this Action, it is **still** true that the Complaint must be dismissed for failure to state a claim. Plaintiff's sole claim fails to plead with particularity the circumstances constituting fraud. Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud

13

or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir.1996) (quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985)). Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) *(*quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir.1996). Claims sounding in fraud must be accompanied by the "who, what, when, where, and how" of the alleged misconduct. *Vess*, 317 F.3d at 1103; *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Compliance with Rule 9(b) requires that the plaintiff be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*, 780 F.2d at 731.

Plaintiff's Complaint fails to meet the heightened pleading standard required for alleging a claim for fraud. Plaintiff alleges no specific representations made by Halmi that meet the elements for fraud. Instead, Plaintiff makes general allegations that Halmi made allegedly false and misleading representations but fails to actually identify when these false representations were made or the content of such false representations. In fact, the only specific representations Plaintiff has identified in the Complaint that Halmi allegedly made are statements that in no way can be interpreted to support a claim for fraud. (Compl. ¶¶ 13, 16, 22, 25, 26, 28). Plaintiff pleads no facts to support that these few representations identified were false or suggest Halmi's knowledge of falsity at the time the representations were made nor an intent to defraud at such time they were made. Furthermore, Plaintiff also fails to allege any facts suggesting that its reliance on such representations was justifiable.

Furthermore, the alleged correspondence between Plaintiff and Halmi referenced Plaintiff's allege is the basis of its fraud claim occur ***after*** Plaintiff was alleged to have been induced into the transaction at issue. *Compare* Complaint ¶ 15 (alleging Plaintiff entered into the license agreement on or around October 15, 2022) *with* ¶¶ 22, 26, and 28 (alleging February, May, and August 2023 emails). *See* e.g. *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.,* 660 F. Supp. 2d 1163, 1189 (C.D. Cal. 2009) (holding email communications after an alleged inducement were irrelevant). Moreover, Plaintiff has failed to allege any damages resulting from any purported false representation made by Halmi. Instead, Plaintiff merely asserts the legal conclusion that "[a]s a direct and proximate cause of Halmi's misrepresentation, Plaintiff has suffered and will continue to suffer monetary harm and significant damage to its reputation." (Compl. ¶ 39.) However, Plaintiff has not pled (and cannot plead) any purported damages as a result of Halmi's alleged false representations, because there are none. As discussed above, Plaintiff entered into the contract with HHL, which ultimately distributed Zylar's rights to Screen Media prior to Screen Media's insolvency therefore the alleged damages were due to causes unrelated to any alleged misrepresentations. *See, e.g.*, *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 60 (1988) ("Assuming, *arguendo*, a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes.").

Because Plaintiff fails to plead its sole fraud claim with the requisite particularity, the Complaint should ***also*** be dismissed for failure to comply with Rule 9(b).

## IV. <u>CONCULSION</u>

For the foregoing reasons, Halmi respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction as well as Plaintiff's failure to plead its single fraud claim with particularity. In the alternative, this Action should be transferred to the Southern District of New York.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

**K&L GATES LLP**

Dated:        April 18, 2025

By: _____
Ryan Q. Keech (SBN 280306)
Rebecca I. Makitalo (SBN 330258)
Johnathan Coleman (SBN 352670)
10100 Santa Monica Boulevard, 8th
Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facisimile: 310.552.5001

*Attorneys for Defendant Robert Halmi*

16

1
2
## **CERTIFICATE OF WORD COUNT**
3
      The undersigned, counsel of record for Defendant certifies that this brief
4
contains 6,238 words, which complies with the word limit of L.R. 11-6.1.
5
6   Dated:        April 18, 2025
7
8                                                  **K&L GATES LLP**

By: _____
9                                                  Ryan Q. Keech (SBN 280306)
                                                   Rebecca I. Makitalo (SBN 330258)
10                                                 Johnathan Coleman (SBN 352670)
                                                   10100 Santa Monica Boulevard, 8th
11                                                 Floor
                                                   Los Angeles, California 90067
12                                                 Telephone: 310.552.5000
                                                   Facisimile: 310.552.5001
13
14                                                 *Attorneys for Defendant Robert*
15                                                 *Halmi*
16
17
18
19
20
21
22
23
24
25
26
27
28

17